UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| OVLAS TRADING, S.A. | CIVIL ACTION |
| VERSUS | NO: 08-4681 |
| SNOW CRYSTAL SHIPPING, LTD., ET AL. | SECTION: "A" (2) |

## ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment on the Cross-Claim Brought by Snow Crystal Shipping (Rec. Doc. 68)** filed by Defendants Cooper/T. Smith Stevedoring Company, Inc., Cooper/Consolidated, CSA Equipment Company, LLC, and New Orleans Cold Storage. Cross Claimant Snow Crystal Shipping, Ltd. opposes the Motion. The Motion, set for hearing on January 20, 2010, is before the Court on the briefs without oral argument. For the reasons that follow, the Motion is DENIED.

## I. BACKGROUND

On May 10, 2005, Universal Reefers, Ltd. ("Universal") entered into a time charter with Cross Claimant Snow Crystal Shipping, Ltd. ("Snow") for the use of its vessel, the M/V SNOW CRYSTAL, for the period of January 1, 2006 through December 31, 2009. Statement of Uncontested Facts in support of the Motion for Summary Judgment on the Cross-Claim Brought

by Snow Crystal Shipping ("SUF"), ¶ 1; Response to Defendants' Statement of Uncontested Material Facts and Cross-Plaintiff's Statement of Contested Material Facts ("RSUF"), ¶ 1. Later, on September 19, 2008, Universal entered into a voyage charter with Hyram Maritime, S.A.L. ("Hyram") for the use of the M/V SNOW CRYSTAL to transport cargo on a single voyage. SUF at ¶ 2; RSUF at ¶ 2. Hyram then contracted with Ovlas Trading, S.A. ("Ovlas") to ship a quantity of frozen chicken from New Orleans, Louisiana to Luanda, Angola. SUF at ¶ 3; RSUF at ¶ 3. Ovlas duly transported approximately 425 megatons of frozen chicken to the Poland Avenue Warf in New Orleans, Louisiana that was to be shipped to Luanda, Angola aboard the M/V SNOW CRYSTAL. SUF at ¶ 4; RSUF at ¶ 4.

Ovlas contracted with New Orleans Cold Storage ("NOCS") to store and load the cargo. SUF at ¶ 5; RSUF at ¶ 5. NOCS in turn contracted with CSA Equipment Company, LLC to load the cargo onto the M/V SNOW CRYSTAL.[1] *Id.* The Cooper stevedores began loading the cargo onto the M/V SNOW CRYSTAL on October 2, 2008. SUF at ¶ 6; RSUF at ¶ 6. On the next day, the stevedores completed loading the "E" deck of hold number two aboard the M/V SNOW CRYSTAL and broke for lunch. SUF at ¶ 7 (the stevedores completed loading the E deck "at approximately 12:45 p.m."); RSUF at ¶ 7 ("based on Cooper's own records, the stevedores worked until 1:00 p.m."). Members of the M/V SNOW CRYSTAL deck crew then entered hold number two to seal off the E deck. SUF at ¶ 8; RSUF at ¶ 8. The stevedores later returned from lunch and began work in the "D" deck of hold number two. SUF at ¶ 13; RSUF at

---

[1]The Court assumes, based on their apparent unity of interest, that Cooper/T. Smith Stevedoring Company, Inc., Cooper/Consolidated and CSA Equipment Company, LLC are related entities. Their precise relationship is unclear from the record. For the sake of simplicity, the Court will refer to them collectively as "Cooper."

¶ 13.  Some period of time afterwards (described by CSA as "short" and by Snow as "45 minutes after [the stevedores] began work"), they noticed smoke and fire coming from the E deck.  *Id.*  The vessel was evacuated and the fire was eventually extinguished, but not before it damaged some of the cargo as well as the vessel itself.  SUF at ¶¶ 14-15; RSUF at ¶¶ 14-15.  Both John Atherton, an expert retained by Snow, and Eric Bernstock, an expert retained by Universal, have opined that the fire was caused by an errantly discarded cigarette.  SUF at ¶¶ 16, 20; RSUF ¶¶ 16, 20.

Ovlas filed suit for the loss of its cargo against Snow, Universal, Hyram, Cooper, and NOCS.  Verified Complaint and Attached Document, ¶¶ 4-34.  Cooper asserted an indemnity claim against Snow.  Answer and Cross-Claim of Cooper at ¶¶ 8-9.  Universal asserted indemnity claims against Cooper and NOCS.  Answer and Cross-Claim of Universal, ¶¶ 46-47.  Hyram likewise asserted cross claims against Cooper and NOCS for indemnity, as well as claims for demurrage damages.  Hyram's Cross-Claim, ¶¶ 9-14.  Finally, Snow asserted claims against NOCS and Cooper for contribution, for damages to the M/V SNOW CRYSAL, and for clean-up costs.  Answer to Cross-Claim of Cooper and Cross-Claim of Snow Crystal Shipping, Ltd. and Holy House Shipping A.B. against Cooper and New Orleans Cold Storage, ¶ 14.  Ovlas' claims were resolved amicably and Ovlas was dismissed from this action, leaving only the various cross-claims among the remaining parties.  July 14, 2009 Order of Dismissal.  Cooper now moves for summary judgment on the claims asserted against it by Snow.  Defendants' Memorandum in Support of Motion for Summary Judgment on the Cross-Claim brought by Snow Crystal Shipping ("Motion"), pg. 1.

3

## II. STANDARD

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id., citing Anderson*, 477 U.S. at 248. The court must draw all justifiable inferences in favor of the non-moving party. *Id., citing Anderson*, 477 U.S. at 255. Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id., citing* Fed. R. Civ. Proc. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993), *citing Anderson*, 477 U.S. at 250.

## III. DISCUSSION

Both Cooper and Snow are in apparent agreement that the fire aboard the M/V SNOW CRYSTAL was caused by an improperly disposed of cigarette. Motion at pg. 5 ("The liability experts of Snow Crystal and Universal have both opined that the fire aboard the SNOW CRYSTAL was the result of an improperly discarded cigarette . . . to succeed in establishing its

claim against Cooper, therefore, Snow Crystal must come forward with . . . evidence . . . that it was Cooper's stevedores . . . that discarded a lit cigarette in the 2E section."); Snow Crystal's Memorandum in Opposition to Cooper's Motion for Summary Judgment ("Opposition"), pg. 2 ("This is one of the relatively rare ship fire cases where all experts agree the fire was caused by one or more cigarettes carelessly tossed into the hold of the vessel"). The controversy between Snow and Cooper, therefore, revolves entirely around whether Snow will be able to prove that Cooper's stevedores were the source of the offending cigarette.

Cooper argues that Snow will be unable to convince a reasonable trier of fact that the cigarette was discarded by its stevedores because every witness, including crew members of the M/V SNOW CRYSTAL, has testified that they did not see anyone smoking in the hold on the day in question. Motion at 6 n. 26. Cooper also argues that a trier of fact could not reasonably infer that its stevedores were the source of the cigarette because members of the M/V SNOW CRYSTAL's crew were the last individuals in the hold, and because, after the fire, numerous discarded cigarettes were found on the "D" and "C" decks, areas in which the stevedores were not working on the day of the fire. Motion at 3, 6-7.

Snow counters that, while it has no direct evidence that the stevedores had discarded cigarettes within the hold, it has sufficient circumstantial evidence linking the stevedores to the fire-causing cigarette to survive summary judgment. Opposition at 3. First, Snow points to the fact that all members of the M/V SNOW CRYSTAL deck crew, the only crew members who work near the hold, have testified that they do not smoke cigarettes, while two of the stevedores working on the M/V SNOW CRYSTAL on the day of the fire have testified that they are regular

smokers. Opposition at 4-6. Second, Snow argues that while it is true that the last individuals on the E deck of hold number two were members of the M/V SNOW CRYSTAL deck crew, they were only there for "a very brief period of time" while "6-7" longshoremen were inside the hold "from 7:30 a.m. until . . . 1:00 p.m." Opposition at 2. Third, Snow argues that the presence of cigarettes in levels D and C of hold number two does not bolster Cooper's argument because the stevedores were working on the D level after lunch on the day of the fire, the only access to the E level required passage through the D and C levels, and because it is logical to infer that, due to the frigidity of the cold storage on the E level, the stevedores took their smoke breaks on the D and C levels. Opposition at 7. Cooper counters this argument by asserting that passage through the D and C levels is accomplished by climbing down a ladder which is located against the vessel's bulkhead, "nowhere close to where the cigarette butts were found." Defendants' Reply Memorandum in Support of Motion for Summary Judgment on the Cross-Claim Brought by Snow Crystal Shipping, Ltd. ("Reply"), pg. 4. Fourth, Snow points out that, while no one saw anyone smoking in the hold, two of its crew members saw one of the stevedores smoking on the gangway leading up to the vessel. Opposition at 6. Finally, Snow argues that the testimony of the individual supervising the Cooper stevedores, Kenneth Joseph Briggs, Jr., is inconsistent with statements made by other Cooper stevedores, and should therefore be discounted. *Compare* Deposition of Kenneth J. Briggs, Jr., pg. 54, lines 9-14 ("I know [smoking was not the cause of the fire] because I'm quite sure that none of [the Cooper crew] smoke.") *with* Deposition of Byron Alexander, pg. 36, lines 19-23 ("Q. Do you smoke in front of [Briggs]? A. Yeah. Q. Does he know you smoke? A. I guess, yes.").

Although Snow lacks direct evidence linking the Cooper stevedores to the cigarette that presumably caused the fire, the Court is mindful of the fact that in claims for damages caused by fire, the fire itself frequently consumes the evidence. *Marquette Transportation Company, Inc. v. Louisiana Machinery Company*, 367 F.3d 398, 402 (5th Cir. 2004); *see First Bank of Denton v. Maryland Cas. Co.*, 918 F.2d 38, 42-43 (5th Cir. 1990). Further, the relevant inquiry at the summary judgement stage is *not* whether the claimant is able to prove, by a preponderance of the evidence, that the defendant is culpable, but rather whether the claimant has adduced enough evidence such that a reasonable trier of fact *could* find in his favor. *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) Finally, the instant case turns peculiarly on the credibility of the witnesses, and is therefore particularly ill-suited to disposition by summary judgment. *United States v. Allen*, 587 F.3d 246, 257 (5th Cir. 2009) ("Witness credibility and the weight of the evidence are the exclusive province of the fact-finder.") The Court therefore finds that Snow has marshaled sufficient evidence to permit a reasonable trier of fact to find in its favor, and, consequently, it must deny Cooper's motion for summary judgment.

Accordingly, and for the foregoing reasons;

**IT IS HEREBY ORDERED** that the **Motion for Summary Judgment on the Cross-Claim Brought by Snow Crystal Shipping (Rec. Doc. 68)** filed by Defendants Cooper/T. Smith Stevedoring Company, Inc., Cooper/Consolidated, CSA Equipment Company, LLC, and New Orleans Cold Storage is **DENIED**.

This 4th day of February 2010.

------------------------------------
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE